Good morning may it please the court my name is Curtis Sherwood and I appear here today on behalf of the Palisades County of Honolulu in this matter. As this court is aware review of reviewing courts such as this one ordinarily gives great deference to the verdicts rendered by juries particularly where a trial has gone through to completion however this court nevertheless has a unique and integral role in ensuring that verdicts are just that they are not premised purely on sympathy or other emotion but have some evidential basis with which supports the legal claims presented your honors the city asserts that the incident case is that extraordinary case in which the trial record is lacking when it comes to such evidential base evidentiary basis it asserts that there is not a sub is not quote a substantial evidence to support the jury's verdict rather in three important respects the trial record is insufficient to justify the verdict reached first and foremost as the courts aware we're dealing with a title 7 claim and plaintiff did not prove a causal link between her 1997 earlier title title 7 case and her to that the the actions taken against her in 2005 as we pointed out in our brief you know the district court judge was a very experienced trial judge and judge Ezra said okay this is a pretty weak case he did but he let it go to the jury and then you renewed your motions after the jury verdict right we did and judge Ezra rejected again having seen all the witnesses having lived with this case for a long time because there were a lot of there were a lot of points of this there were a lot of arguments made that were dismissed before they ever got to trial so what mistake did judge Ezra make? well he made a number of mistakes your honor but I think the one that's most glaringly obvious is the fact if you read his opinion he mentions that the relevant period he takes essentially plaintiffs word for the law as to what the relevant period was with regards to retaliation what do you mean by as far as in implying some sort of retaliation simply from the context this was a pure circumstantial case your honor and it wasn't a pure circumstantial case in the sense that her testimony included being yelled at about the lawsuit and being told you know don't talk to me I don't want to talk to you don't ever talk to me because you put forward this lawsuit so there's some direct testimony about hostility that is here that's a little bit beyond mere timing but even timing is inferentially permissible isn't it? it is your honor under certain circumstances I think the episode that that your honor is referring to actually occurred in 1997 and involving Chief Correa and I apologize our citations and our opening brief are not the best but that incident involving then Major Correa was essentially the reason that Major Correa was brought into that original sexual harassment lawsuit. Right but then in 2004 it seems that Lima I think is the name of the person who was the supervisor did have some knowledge of the being an officer there a high-ranking officer at the police department but Lima the the trial record really isn't specific in what they're alleging that that Lima did really what what the grievances that the plaintiff is making is the fact that she was criminally prosecuted and that they followed the police authority so pursuant to that she was she was transferred out of the job that she was in she was required to tender her vehicle and her cell phone. Wasn't there also testimony that she was given somewhat more onerous tasks like having to complete mileage logs that she didn't used to have to do and things along those lines that her day-to-day life was also made more difficult. That's the one and only example I can recall your honor about the mileage logs. Well why couldn't a jury taking all of that together even though it's a weak case say well it's weak but we're persuaded that it's a fair inference a reasonable inference from everything that happened. I think it's too weak your to constitute an adverse employment action just simply to state that you had to complete mileage logs that she did previously. I think the real harm is that the prosecution among other things. That's the real harm your honor is the prosecution and as I tried to point out in our briefs a police counsel intervener actually harked on this time and time again in their closing argument the fact that she was subject to a criminal prosecution and I really feel that's what the jury was compensated. What's wrong with that? What's wrong with pointing out that that was her in fact that was her claim that's what she's complaining about. Well your honor I would assert that there was probable cause for that and if we take that tack then basically you're you're going to be impeding any sort of criminal prosecution in the future with anyone you're giving a blank check to anyone that's ever filed a successful title 7 claim. That's not all she showed. You spoke a minute ago about the ROPA policy. I think that's the right acronym. Wasn't there testimony that our evidence introduced one way or another that that policy was not always followed? I don't recall that your honor. I was not trial counsel but reviewing the record I don't recall that as being part of the record. I believe it in most cases it's followed I believe it's in all cases followed as far as I know your honor. I'll double-check the record but that's that's not what I have in my notes but but setting that aside the other I'd like to get back to your other comments about the circumstantial evidence of causation because I recall from the record that the chief testified that he didn't make this decision to refer the case for investigation. Absolutely your honor. But his subordinate testified that he did make the final decision and the jury heard that testimony. That the subordinate made the decision not the chief your honor. The only the only manner in which the chief was involved was his name on a form memorandum. Right. Which the chief which the deputy chief signed off. I think we're saying the same thing. Yeah. Right. Yes your honor. Right. So the chief really didn't have didn't play a role in any of the so-called administrative or adverse employment actions that took place. Well he said that he recused himself but he is also the one who said that he's placed her on administrative leave for three days right. I believe so. And required her to return her car. Yes. And transfer her to the records division. Correct. Thank you. With respect to the prosecution what what's the what's the problem here? What what what is this an argument that the jury would have had to have found that there was no probable cause for the for the argument the jury instructions what's the what's the city's. That's part of it your honor. And we have argued that there should be an additional element to be proven for retaliation case where the retaliation is a criminal prosecution based on that Hartman Hartman Bivens case. But in addition to that the prosecution was. Hartman is a is a Bivens case right. And this is not a 1983 action. It's not a constitutional argument. So how do you how do you get from Hartman to a Title 7 case. You're still dealing with. Retaliation your honor. And whether whether the retaliation is proper or not. Whether the reality retaliation is based on probable cause or whether it's some nefarious form of retaliation. But whether the is that the problem that the district court didn't didn't instruct them that they would have to find it was a lack of probable cause for the prosecution. Yes your honor. Did you did you did you request that. We did not. OK. So it's now it's now a plain error case. That is a plain error. It is a plain error based on Hartman. Yes your honor. OK. But Hartman again is a Bivens case not a not a Title 7 case. So do you have a Title 7 case that would suggest that there's plain error here. I don't your honor. OK. If since there's a bit of a and the city didn't find it itself. Why was it that Judge Ezra was supposed to figure this one out all by himself. Or or or suffer reversal from us. Well I think the prosecution itself should should have set off alarm bells for the court. The fact that there was this independent. It didn't set it off for the city. Not and not at that point. That's always the problem with the but you know we do have the fact that the grand jury made this separate determination of probable cause and that there was sufficient facts for that determination. So I think as the Supreme Court emphasized where you have that you have some circumstantial evidence of good faith. Then are you suggesting then that the district court should have instructed the jury not to consider the prosecution as part of the retaliation package. The problem is your honor is that the trial court let these malicious prosecution claims go all the way through to the end. But it pretty much would have come come in anyway wouldn't it. I mean as a practical matter that you were talking about the whole the whole package here you might not have had those those specific claims tried but surely the fact of the prosecution would have been admissible evidence at some point in this trial. I think we would have tried to keep it out your honor if the we would have asked. But but nobody but nobody asked the jury be instructed that that the jury not to take into account the prosecution as part of the retaliation case. That's correct. And that's plain error on the part of the district court. Well your honor they're they're all lumped together as far as far as that. Yeah we're now at a point where if you didn't request the jury a specific jury instruction on that point you've got to be able to say that the district court committed plain error. And that's not even Hartman is it? Correct. Okay so do you have any case that would should have informed Judge Ezra that he had a duty to instruct the jury that they were not to consider the prosecution of Ms. Black as part of the retaliation case? No your honor. Nevertheless your honor I still think still assert that there's insufficient grounds for causation here. And I'd like to point out some instances in the record that I did did mention. As I mentioned the administrative and criminal investigations were initiated pursuant to the ROPA which even the district court acknowledged applies fairly regularly in for example in police shooting cases. We have testimony that Ms. Kamahele was not influenced by anyone named in plaintiff's earlier lawsuit. That's at our excerpts 269 13 through 18. We have evidence that a policy that the investigations were conducted pursuant to HPD policy that mandated that all complaints be investigated. That's at our excerpts 284 to 285 12 through 4. And that the administrative actions taken those the transfer the surrender of the vehicle the all of those things. Not only did Chief Kajiyama make that decision it was it was not the chief's but he did so after consulting with the city's equal opportunity officer the department of corporation council HPD's legal advisor the labor relations specialist of HPD the major of HPD's human resources division and another deputy chief all with to ensure that the course of action taken was fair impartial and inconsistent with its ROPA policy. Counselor you have about a minute and a half if you'd like to save some rebuttal time. I'll do that. Thank you. Good morning. In my short career I've come to introduce yourself for the record. I'm Mark Beatty. I'm an intervener and former attorney for Sharon Black. In my short career I'm doing retaliation work. I've come to the conclusion that the the synchronon of a retaliatory fire is that the defendants are practiced liars. And addressing the the comment that Judge Ezra made orally that this this is a weak case I would say that supports my contention that the defendants are practiced liars and they have a strategy and they had a plan and they set up Ms. Black. One of the things before the court is additional hours because I went to two seminars. There are outlet seminars I went and before a bunch of colleagues and instructors and another one before three groups of people a mock jury and got feedback and the feedback I got from the mock jury and the and the experienced attorneys is that well the big the big factual point that I could prove very convincingly and I think I do in page eight through nine I'm opening brief I think I have like 17 references to my excerpts. And over and over again her whole career she started this program and from the beginning her practice throughout the whole program is part of her job was to write and take get statistics from the MEO Medical Examiner's Office and take and write up reports. And why that's an essential part of her job is that officers would take mentally people with mental problems and instead of just using the judicial system they would take them to medical facility and Ms. Black would facilitate them getting an alternate form of help. Now some of those people when they were taken to the hospital a day later they ended up in the Medical Examiner's Office dead. Now that's a serious problem for her whole program. And again eight and nine I go through excerpts of reference over and over again saying that this was her job all the way along. And she needed to know if the worst case scenario happened and the only way to know that is to go to the Medical Examiner's Office, research the And she did this for like ten years and there's multiple reports. Harada, Lieutenant Harada who testified very, I say that's direct evidence he had. He says of course it was her job. It was well known that it was her job and her job description was in her central file available to everyone. And this is someone who worked with her and this is someone who wrote all the hand notes. Again eight through nine I list those and a bunch of other places in my opening brief. And that's the famous sticky note that I'm going to find a reference for the sticky note. But where he says I want more research for the next six months over the next six months. In a way that's a direct thing. He says go to the only place where you could go and get information on this. And do what you've been doing for the last ten years and write it up. Oh and here's the deadline and we all want it. And we all got a lot of other things we're doing. But you got your job. You understand it? Okay go do your job. And I believe it's on exhibit 41 around page well 1,000. My excerpt record starts at 1,000. So 1,665 is that particular one. So and this is why I think this whole appeal is subject to rule 38 sanctions. Because it's never my job to disprove that someone told her not to do it. Or told her to go. That's most of the decision. Say is there someone who orders you to go down there at this certain time, this certain thing. No it's their job she's been doing for ten years. Counsel can I ask a question that's off completely off subject forgive me. But it's in my notes and I wanted to make sure you had a chance. My notes show that the record at 1,366 shows that the ROPA policy was not always followed. Is that correct? Was there evidence to that effect? 1,366. And I'm going to have a related question. 1,366. Right. I'm not so concerned if I've got the right citation to the record. I want to know whether or not there was a testimony before the jury that the ROPA policy was not always followed. But it was in this case. Is that right? You know your honor my impression is that came up. I'll be candid that looking at a lot of times in analogous situations where someone in the situation were not subject to ROPA. That wasn't part of my legal strategy. I didn't have. I think you've answered my question. So now my follow up question is does the ROPA policy apply to civilians like black or just to people who are part of the police department? Was there evidence about that? My knowledge from a dozen or so people in the police system. Yes definitely. It applies to any employee. So a police officer obviously if they're on ROPA they're turning in their weapon also. Ms. Black didn't have a weapon. So you don't contest that ROPA applied to Ms. Black? That's my question. In theory at least as a civilian non-officer. Is that what you're getting at? That's what I'm trying to figure out. What was what did the jury hear? Was that a contested issue at trial? Your honor it might be very unusual that they applied it to civilian. Counsel I'm just asking a really clear question and I just want to know whether the jury heard was there a dispute about its applicability at trial? Did the jury hear a dispute? That was not part of my legal strategy and I had no witnesses directly to bring that. Thank you. Thank you Judge Graber. Counsel I've got a question that's even more off the beaten path than Judge Kristen. This case comes to us in a very unusual posture because you are representing yourself here only and not your former client. Can I disagree with you? Is that I want her jury to win and in that I want to say yes. I understand that. You have two things as I understand it you have two things at issue here. You have roughly about $92,000 in attorney's fees for yourself that are at issue here. Yes. And then you have you have some contractual share of any jury verdict that is that in her favor. Yes. Okay. What will the city be obligated in your view what would the city be obligated to pay here? Are they obligated to pay the full amount of her of the verdict that she was awarded and if so where does the difference go? Right and your honor I filed the court asked for information on that and I there's two things that I did to give information to the court. The I contacted a lawyer that has to do with something to do with Sharon's estate. He didn't give me much information. I gave him a lot of information about this case and the court required information about where that money would go to be submitted. Well wouldn't it normally go to her estate? And that's exactly what I argue. I argue that that money so so about that other person that person who's dealing with some things of hers he disclined to be involved in this. He didn't want to and so I say go to her estate and since she does not have a will it would it would just transfer via state intestate laws so it end up going to her two children. Okay so your your view is that the whole $150,000 if we were to affirm the judgment the whole $150,000 should be awarded anyway and the state intestacy laws will figure out how to distribute the difference between the $150,000 and your percentage of it. And I have a contractual over one-third. But the estate hasn't substituted in right? The personal representative hasn't. Right and he specifically told me and I put this on the I think it's May 12, 2012 seven page filing. I put his name I talked about the conversation we had and he said that well he thinks that being a person a representative in court is beyond his authority and he declined. I sent him like eight emails with things about the case. You know attachments about the case. He was well informed about that. I want to talk about jury instructions. It talks about several things relevant to this course. There's a clause about requiring something on probable cause. I believe Judge Bybee brought up the issue how would the judge have known if it wasn't brought up and there's no clear case law that even opposing counsel could think of right now. So in the notice there is nothing specifically about jury instructions. Of course in the notice of appeal it referred to the order of Judge Ezra to their renewed motion for a judgment as a matter of law. And he talks about jury instructions a lot in there. And in their mediation statement they say oh by the way and they add on jury instructions, they add on MSJ. All these things they added on that they didn't put in their notice. Counsel you've lost me. Forgive me. I understood Judge Bybee to be asking about the jury instruction that was given and why would we expect the trial court judge to have instructed the jury about this theory, this Bivens theory. That's what I thought he was asking it. Right. And my point about that is that the whole issue of insufficient jury instructions was not properly noticed. However, later on On appeal? Are you talking, you're using the word notice. You're talking about on appeal? According to Federal Rules of Appellate Procedure Rule 3 paragraph I think it's But counsel that's what's confusing me. Forgive me but I understood the question to be going to what happened in the trial court. Did I misunderstand the question? The question that I've got anyway has to do with why was it incumbent upon the trial court judge to give such an instruction to the jury if the city did not request it? And my point that that whole issue is improperly before the court because it was not properly noticed. Also the whole issue of Judge Ezra making an error on a motion for summary judgment isn't properly before this court. I wrote for Rule 38 sanctions and city answered excessively late. I did the 21 day notice and I actually gave them like two or three months time to change things. So I have met all the requirements of Rule 11 also. So it's questionable about any arguments they have for Rule 11, Rule 38 sanctions. If they could make that before this court because they missed those deadlines. So that point I have is that there's serious failures of the city to meet deadlines and to meet the rules. And those three things I mentioned, believe it or not, probably before this court. And that's why, again, I maintain that this is a frivolous appeal. And what I thought would happen actually did happen and it caused a lot of hardship on Ms. Black and she's not here. April 5th she passed away. So about notice, insufficient notice. That was that point. I want to just touch on one argument about the official versus equitable life risk multiplier, about the risk multiplier. Now the 61 page order that the magistrate judge filed, it talked a lot about my hours. It reduced my hours from like 1,100 down to like 600 I believe it was. So 53% of the hours that I submitted. And a lot of justification, a lot of argument. I argued about two categories. One is the means I went to consult with much more experienced attorneys to just achieve that practice and insight that they have that you can only get from someone who's been practicing for 20 or 30 years. Counsel, you have used up your time. We understand your arguments. We've read the briefs and nothing that you haven't said is waived or forfeited by not raising it orally. Just thank you for your time. Thank you. Mr. Sherwood, you have just shy of a minute and a half left. I don't know that I'll need all that time, but I'll try to make use of some of it. First I would object to any of opposing counsel's assertions concerning what was or was not in a mediation statement that's not properly before the court. And frankly, it's improper to cite anything in that. I'd like to go back to the causation argument, which is the central most important argument to our appeal. I think I mentioned some of the evidence that the court has before, but I also mentioned that the plaintiff herself testified that she had no knowledge that anyone involved in her 1997 lawsuit directed the medical examiner's office staff to get her into trouble. And she also, there was no evidence that Chief Correa or Deputy Chief Kajiyama colluded with the deputy prosecuting attorney, Christopher Van Marder, and he himself testified that this was a decision he made on his own and was not influenced by anyone else. I did note in our reply that plaintiff intervener in his brief cited for the court a number of cases that state where such a long period has elapsed that we have here, like eight years. I think he actually has some cases citing less than a year, 10 months, is not sufficient in and of itself. Counsel, you also have exceeded your time. So if you can have a sentence to wrap up. It's simply not sufficient. And I think they're missing the point. There has to be some causation between these two elements. And there simply was not one demonstrated. Thank you. Thank you. Can I ask a question? Yes. Before you sit down, I would like to direct the same question to you that I addressed to Mr. Beatty concerning what we do with this unusual procedural posture with the death of Ms. Black and the refusal of her personal representative to enter the suit. If we assume, for purposes of my question, that we were to affirm the judgment, then there would be both an attorney's review award to Mr. Beatty. And then in the city's view, what happens to the $150,000 judgment the jury awarded to Ms. Black? I think it goes to her estate. Okay. So it goes to her estate, and then Mr. Beatty can deal with the estate on any contractual claim that he has. Correct. I'm not certain, however, though, that the attorney's fees award is properly the property of the intervener. I believe it's actually the property of the estate. It should be the property of the estate. Why would an award of attorney's fees be the property of the estate? I believe there's case law, and I may have cited it in one of the numerous filings dealing with attorney's fees. Your view, then, is that some $242,000 would then go to the estate? Yes. And then Mr. Beatty should talk to the estate? Correct. Thank you, counsel. Thank you. The case just argued is submitted. We thank both counsel.
judges: Graber, Bybee, Christen